UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TROY ALLON SNOOK,<br><br>Plaintiff,<br><br>v.<br><br>CALVIN JOHNSON, *et. al.,*<br><br>Defendants. | Case No. 3:23-cv-00338-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 37] |

This case involves a civil rights action filed by Plaintiff Troy Allon Snook ("Snook") against Defendants Calvin Johnson ("Johnson"), Julie Williams ("Williams"), and Michael Minev ("Minev") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 37.) On May 5, 2025, the Court gave Snook notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998). (ECF No. 41.) Snook did not timely file his response, thus the Court *sua sponte* granted Snook an extension of time to file his response. (ECF No. 43.) To date, Snook has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 37), be granted.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Snook is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Snook was incarcerated at High Desert State Prison ("HDSP"). On April 1, 2024, the District Court screened Snook's complaint pursuant to 28 U.S.C. § 1915A and allowed Snook to proceed on two claims against Defendants: an Eighth Amendment failure to protect claim against

---

[1]      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Defendants Williams and Johnson; and an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Minev arising out of an incident involving Snook and his cellmate at HDSP. (ECF No. 8.)

In support of their motion for summary judgment, Defendants have submitted the following undisputed evidence to the Court to support the facts in this case. This undisputed evidence establishes the following: on December 7, 2021, at around 8:45pm, Snook was attacked by his cellmate when they were in their cell. (ECF No. 9 at 3.) Snook screamed for help and pressed the "call button." (*Id.*) Correctional Officer E. Torres ("Torres") was stationed in Unit 11 at HDSP and responded to the noise. (ECF No. 37-12 at 2.) When Torres arrived, he observed Snook laying in his bed with his face hidden behind a towel. (*Id.*) Snook eventually showed Torres his face, which had "multiple bruises and a mouth covered in blood." (*Id.*) A medical nurse was performing pill pass in the unit and observed Snook through the cell window. (*Id.*) Another nurse arrived approximately ten minutes later. (*Id.*) Snook and his cellmate were placed in mechanical wrist restraints and taken to receive medical care. (*Id.*)

Later that evening, Snook was transported to UMC where he was evaluated and treated. (ECF No. 39-2 at 27-28 (sealed).) When Snook returned to HDSP, his treatment was continued per the recommendations of the emergency room. On December 16, 2021, the NDOC's Utilization Review Committee ("URC") submitted and approved an Ophthalmology consult for Snook. (ECF No. 39-2 at 20 (sealed).) On December 22, 2021, an optometrist appointment was approved. (*Id.*) On January 26, 2022, Snook saw an optometrist at the Abrams Eye Institute. (ECF No. 39-3 at 6-8 (sealed).) The optometrist conducted a comprehensive examination and determined that Snook's right eye had Phthisis Bulbi and no further treatment was required. (*Id.*) During the time between the Ophthalmology consult and the visit to Abrams Eye Institute, Snook kited to see an eye specialist, was told that he was on the list to be seen by a doctor and was provided pain medication. (ECF No. 37 at 20, 45, 79.)

///

During his intake, it was noted that Snook has a history of blindness in his right eye. (ECF No. 39-2 at 10 (sealed).) According to a declaration from Williams, Snook did not have anyone listed on the offender non-association screen, which would have notified prison officials that Snook was threatened by another offender and could not be housed with them. (ECF No. 37-14 at 3.) Additionally, according to Snook's disciplinary history and bed history, there was no evidence Snook's cellmate was a known threat to Snook. (ECF Nos. 37-10; 37-12.)

On May 2, 2025, Defendants filed a motion for summary judgment arguing: (1) Snook failed to show that there was any failure to protect him from his cellmate; (2) there is no evidence that Snook received unconstitutional medical care for his preexisting injury to his eye; and (3) Defendants are entitled to qualified immunity. (ECF No. 37.)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit

attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

1  dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden
2  is "not a light one," and requires the nonmoving party to "show more than the mere
3  existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d
4  376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from
5  which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*
6  *Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere
7  assertions and "metaphysical doubt as to the material facts" will not defeat a properly
8  supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v.*
9  *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

10     Upon the parties meeting their respective burdens for the motion for summary
11 judgment, the court determines whether reasonable minds could differ when interpreting
12 the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*
13 *of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in
14 the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).
15 The court will view the cited records before it and will not mine the record for triable issues
16 of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor
17 provide support for a possible objection, the court will likewise not consider it).

18 **III.   DISCUSSION**

19     **A.   Requests for Admissions**

20     As an initial matter, Defendants argue because Snook failed to respond to requests
21 for admissions, those requests for admissions are deemed admitted and Snook "is
22 deemed to have conceded what the undisputed records already establish." (ECF No. 37
23 at 6-7.)

24     Under Rule 36(a)(3) a matter is deemed admitted "unless, within 30 days after
25 being served, the party to whom the request is directed serves on the requesting party a
26 written answer or objection addressed to the matter and signed by the party or its
27 attorney." Fed. R. Civ. P. 36(a)(3). "Once admitted, the matter 'is conclusively established
28 unless the court on motion permits withdrawal or amendment of the admission' pursuant

to Rule 36(b)." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing Fed. R. Civ. P. 36(b)).

In cases where an inmate is proceeding *pro se*, the moving party must inform the inmate that a failure to respond to a request for admission will deem the matter admitted. *Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998) (holding "pro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served.") In their requests for admissions, Defendants informed Snook "a failure to respond to these Requests for Admissions may result in the matters herein being deemed admitted in accordance with Rule 36. (ECF Nos. 37-5 at 3; 37-6 at 3; 37-7 at 3.) The Court finds this language to be sufficient notice to Snook. Accordingly, the Court finds the requests for admissions will be deemed admitted.

### B. Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' have stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.*

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

### 1. Analysis

The Court allowed Snook to proceed on his failure to protect claim against Williams and Johnson based on Snook's claim that "it is well known throughout HDSP that correctional officers have a practice of ignoring inmates when they press their call buttons." (ECF No. 8 at 7.) Defendants' motion for summary judgment argues Defendants were

unaware of any increased risk of harm to Snook and Snook effectively admitted he has no knowledge of such a policy. (ECF No. 37 at 7.)

According to the undisputed evidence before the Court, Defendants were never informed of any threat or danger to Snook, who was housed with his cellmate for at least 77 days without any record of prior incidents. (ECF Nos. 37-10 at 2; 37-14 at 3.) Snook did not have anyone listed on the offender non-association screen, which would have notified prison officials that Snook was threatened by another offender and could not be housed with them. (ECF No. 37-14 at 3.) Additionally, according to Snook's disciplinary history and bed history, there was no evidence that Snook's cellmate was a known threat to Snook. (ECF Nos. 37-10; 37-12.) Moreover, Williams stated she does not recall ever having a conversation with Snook regarding any threats he had received. (ECF No. 37-14 at 3.)

As for Snook's allegation that a policy to ignore inmates who press call buttons, the record is completely devoid of any evidence of such a policy existing. Snook's own allegations, without more, cannot establish the existence of such a policy. Thus, Defendants have met their initial burden on summary judgment by showing the absence of evidence supporting Snook's failure to protect claim. The burden now shifts to Snook to produce evidence that demonstrates an issue of fact as to whether the Defendants failed to protect him.

Importantly, Snook does not claim that Defendants were aware of any harm posed by his cellmate. His claim is based on his assertion that Defendants knew of a practice and/or policy of ignoring calls. However, aside from his own assertions, Snook provides no evidence that HDSP indeed had a practice of ignoring calls or that Defendants were aware of such a policy. Additionally, through his non-answer to Defendants' Requests for Admissions, Snook admitted that he does not have any evidence that Defendants were aware of an alleged practice of HDSP staff ignoring inmates when they press their call buttons or that Defendants failed to take action to correct such a practice. (*See* Fed. R. Civ. P. 36(a); ECF Nos. 37 at 8, 37-5 at 4, 37-7 at 4.)

Here, the Court finds no genuine issue of material fact exists as to whether the Defendants failed to protect Snook, and accordingly, recommends Defendants' motion for summary judgment be granted as to this claim.

### C. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105. Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002); *Shapley v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately

indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett,* 296 F.3d at 744 (internal quotation omitted). However, a prison official may only be held liable if they "know[] of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

### 1. Analysis

Defendants argue summary judgment should be granted as to the deliberate indifference to serious medical needs claim because NDOC took immediate steps to ensure that Snook obtained medical care by transporting him to UMC and continued treatment per recommendations of the emergency room when he was in the HDSP infirmary. Defendants further argue that the URC submitted and approved an Ophthalmology consult on December 20, 2021, which was 12 days after the incident, and Snook was given pain medication while he waited to be seen. (ECF Nos. 37 at 10; 39-2 at 20 (sealed).)

Starting with the objective element, there is no dispute that Snook's eye injury, phthisis bulbi, qualifies as a serious medical need. (*See* ECF No. 37-13 at 3) (stating that phthisis bulbi is a "shrunken, non-functional eye," and treatment focuses on pain relief, since restoring vision is "generally not possible"). However, Defendants argue summary judgment should be granted because Snook cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Snook's condition, as he was provided appropriate medical care.

Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Snook's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The undisputed evidence before the Court establishes the following: on the night of the incident, Snook was transported to UMC where he was evaluated and treated. (ECF No. 39-2 at 27-28 (sealed).) When Snook returned to HDSP, his treatment was continued per the recommendations of the emergency room. On December 16, 2021, the NDOC's URC submitted and approved an Ophthalmology consult for Snook. (ECF No. 39-2 at 20 (sealed).) On December 22, 2021, an optometrist appointment was approved. (*Id.*) On January 26, 2022, Snook saw an optometrist at the Abrams Eye Institute. (ECF No. 39-3 at 6-8 (sealed).) The optometrist conducted a comprehensive examination and determined that Snook's right eye had Phthisis Bulbi and no further treatment was required. (*Id.*)

The parties agree Snook was transported, evaluated, and given medication at UMC the night of the incident and Snook was informed that UMC did not have an eye specialist on site. (ECF Nos. 9 at 6, 39-2 at 23 (sealed).) Snook admits he received medical care while he waited to be seen at Abrams Eye Institute. (ECF No. 37-6 at 4.) Lastly, Snook admits he has a history of blindness in his right eye. (ECF Nos. 37-6 at 5, 39-2 at 7, 10, 13 (sealed)) (noting blindness in his right eye since February 2020).

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively treated Snook's medical conditions. Accordingly, Minev has met his initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the Snook's claim of deliberate indifference to a serious medical need. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Snook to produce evidence that demonstrates an issue of fact exists as to whether Minev was deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

///

Snook alleges that the Abrahm's Institute specialist informed him that he "may have saved Plaintiff's eye" if he had seen Snook earlier. (ECF No. 9 at 8 ¶ 40.) However, aside from his own allegations, Snook provides no further evidence or support that a denial or delay in treatment caused him any damage. Further, Snook has not come forward with evidence to show Minev knew of an excessive risk to his health and disregarded that risk.

Therefore, Snook has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs, as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with treatment related to his eye. *See Hallett*, 296 F.3d at 744.

Accordingly, the Court recommends that Defendants' motion for summary judgment, (ECF No. 37), be granted, in its entirety.[2]

**IV.   CONCLUSION**

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 37), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

---

[2] Because the Court has determined that the motion for summary judgment should be granted on the merits of the claims, it need not address Defendants' other procedural arguments, including personal participation and qualified immunity.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 37), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly, and **CLOSE** this case.

**DATED**: July 18, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**